# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) | |
| | ) | 03 CR 950 |
| CAROLYN PEASE | ) | |

## MEMORANDUM AND ORDER

This matter is presently before the Court for sentencing. After pleading guilty to one count of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1), Defendant Carolyn Pease filed objections to the Presentence Investigation Report ("PSR") prepared by the United States Probation Office ("Probation"). For the reasons set forth herein, this Court sustains Pease's objections and imposes a sentence of eight (8) months home-confinement, five (5) years probation, a fine of $4,000, and restitution in the amount of $11,180.

## BACKGROUND[1]

Since 1992, Pease has worked as a sales representative for Air Filter Engineering. She was apparently a very dedicated and successful employee, who earned the nick name the "filter queen" for her outstanding sales performance. One of Pease's filter customers was the General Services Administration ("GSA"), a federal agency which manages the Dirksen Federal Building, the location of this Court. In her Plea Agreement, Pease admits to offering to pay three bribes and actually paying two bribes to a GSA supervisor ("the Supervisor") in return for awarding her filter contracts at the Dirksen Building. In each case, Pease promised the Supervisor that if she was awarded the contract, she would give him part of her sales commission.

---

[1] The facts in this opinion are derived from the PSR, the Plea Agreement, the attachments to the parties' submissions, and evidence presented at the sentencing hearing.

The first of these bribes occurred in November of 1999 when Pease told the Supervisor that "she would give him $2,000 cash for his assistance in obtaining the award of the [contract] for Pease's company." After Pease's company was awarded the contract, she gave the Supervisor $2,000 as promised. Based on paper work submitted by Pease, she received a commission of $7,500 for this contract (which was worth $24,500).

Next, Pease admitted that in January 2000, she offered to "split her commission" with the Supervisor if her company received a $139,000 air duct cleaning contract. She told the Supervisor his share of her commission would be $10,800. Based on the Plea Agreement, it is unclear whether Pease received this contract or paid the proposed bribe.

The final bribe occurred in October 2000, when Pease offered the Supervisor $2,000 for "his assistance in obtaining" an "air filter supply contract totaling $30,175." After her company was awarded the contract, she gave the Supervisor $2,000 as promised. Based on paper work submitted by Pease, she received a commission of $3,680 for this contract.

In a "Supplemental" PSR, Probation subsequently calculated the total offense level, using the 2000 edition of the United States Sentencing Guidelines ("the Guidelines"), as follows:

| | |
|---|---|
| Base Offense Level (§ 2C1.1) | 10 |
| Paying More than One Bribe (§2C1.1(b)(1) | 2 |
| Value of Bribes (§2C1.1(b)(1)) | 4 |
| Adjustment for Acceptance of Responsibility (§ 3E1.1(a) and (b)) | -3 |
| Total Offense Level | 13 |

Based on an offense level of 13 and a criminal history category of I, the Guidelines recommend a

sentence of 12 to 18 months. Probation recommends that this Court sentence Pease to the low end of the Guideline range – 12 months.

Pease has now filed a "Position Paper On Sentencing As To Sentencing Factors," in which she objects to Probation's calculation of the value of the bribes. The Court will review this objection and the effect of United States v. Booker, 125 S.Ct. 738 (2005) on her sentence.

## ANALYSIS

I.   **Value Received from the Brides**

Before addressing Pease's specific objection, this Court will briefly review the Booker decision and its impact on the calculation of Pease's sentencing. In Booker, 125 S. Ct. at 745-54, the Supreme Court held that its prior decision in Blakely v. Washington, 124 S. Ct. 2531, 2537 (2004), which held that the state of Washington's "sentencing scheme" violated the Sixth Amendment because it allowed judges to sentence a defendant beyond the maximum range set forth in the state statute based upon facts "neither admitted by [the defendant] nor found by the jury," applied to the federal Guidelines. Based on this application, the Booker court held that the Guidelines likewise violated a defendant's right to have a "jury find facts essential to his punishment" because they permit judges to impose a sentence greater than the maximum authorized in the Guidelines based upon "facts beyond those found by the jury" or admitted by the defendant.[2] 124 S. Ct. at 749-51. Consequently, under Booker and Blakely, to impose a sentence exceeding the prescribed Guideline range, the facts must have been specifically

---

[2] To cure this constitutional deficiency, the Supreme Court: (1) severed and excised two statutory provisions of the Sentencing Reform Act of 1984 which made the Guidelines mandatory –  18 U.S.C. §§ 3553(b)(1) and 3742(e); and (2) held the Guidelines to be "advisory" instead of mandatory. Booker, 125 S. Ct. at 756.

included in a guilty plea or found beyond a reasonable doubt by the jury, or, where the defendant waives his right to a jury finding, by the court.

Here, Probation calculated $27,500 as the "value of the benefit" Pease received for the payment of the bribes. Probation based the above amount on the commissions which Pease allegedly received for three contracts her company was awarded in return for the bribes (35% of $24,500, $10,465, and $30,175). In the Plea Agreement, Pease admitted to offering three bribes in exchange for the award of three contracts. (Plea at 3-5.) The Plea Agreement, however, does not state that three bribes were actually paid or that GSA awarded three contracts in return for these bribes. Pease admitted to paying two bribes and receiving two contracts, valued at $54,675. She also admitted to offering a third bribe in return for a contract valued at $139,000.

Pease submitted documents showing that for the two bribes she actually paid, she received commissions of $7,500 and $3,680 – a total of $11,180. Pease also contends that to calculate the "value of the benefit" she received, this Court should subtract the taxes she paid on her commissions. While this contention appears reasonable, this Court does not believe that given the language of section 2C1.1(b)(2) that it is appropriate.

At the sentencing hearing on March 18, 2005, the Government, for the first time, proposed that to calculate the total amount of loss for all the bribes paid that this Court should use the net value of the benefit Pease received ($11,180) for the two bribes she pled guilty to paying plus $5,000 in additional bribes that she admitted to paying in the Plea Agreement but which was not charged in the indictment.

In calculating the amount of loss for an offense involving more than one bribe, section

2C1.1(b)(2)(A) states that: "if the value of the of the payment, the benefit received or to be received in return for the payment, or the loss to the government from the offense, which ever is greatest, exceeded $2,000, increase by the corresponding number of levels in the table in [section] 2F1.1." Pease contends that under section 2C1.1(b)(2)(A), this Court can either use the net value of the benefit received or the value of the bribes paid but cannot use a combination of the two. Given that section 2C1.1(b)(2)(A) is written in the disjunctive, this Court finds that Pease's contention would appear to make sense.

Normally, this would not present a problem to the Court. Here, however, the Government cannot calculate the net value of the benefit received from the $5,000 in additional bribes. Therefore, according to Pease, this Court should not add the $5,000 in bribes paid to the net value received for the two bribes she pled guilty to giving. Although Pease's reasoning appears to be supported by the plain language of the Guidelines, this Court finds that the Sentencing Commission would not have approved of such an absurd result – particularly here where the net value of the benefit received would be at least $5,000 because people generally do not give bribes to get less money back in return.

Accordingly, this Court finds that the total amount of loss for the bribes Pease paid to be $16,180 ($11,180 plus $5,000). Based on this revised valuation, this Court finds that under section 2C1.1(b)(2)(A) the value of the bribes warrants a three level increase, and therefore, Pease's base offense level comes to a 16. With a three level decrease for acceptance of responsibility, her total offense level is a 13. At this level, with a criminal history category of I, the 2000 Guidelines recommend a sentence of 12-18 months incarceration.

5

## II.     Sentence Determination under Booker

Having resolved Pease's objections, the Court now turns to sentencing her under the dictates set forth in Booker. After Booker the Guidelines are now advisory, not mandatory. District courts, however, "while not bound to apply the Guidelines, must consult . . . and take them into account when sentencing," subject to review on appeal for "unreasonableness." Booker, 125 S. Ct. at 767. In addition to the Guidelines, Booker held that sentencing courts should consult and consider the sentencing factors enumerated in 18 U.S.C. § 3553(a), which requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." Under subsection (a)(2), the sentence imposed should:

> (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) afford adequate deterrence to criminal conduct;
> (C) protect the public from further crimes of the defendants; and
> (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553 (a)(2)(A)-(D). Section 3553(a) also requires that "in determining the particular sentence [the court] shall consider": (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (6), and (7).

Accordingly, in light of Booker, in determining a "reasonable sentence," this Court

finds that the prudent method is to start with the prescribed Guideline range and then "consider that range as well as other relevant factors set forth in the [G]uidelines and those factors set forth in § 3553(a)." See United States v. Hughes, 2005 WL 147059 (4th Cir. Jan. 24, 2005).

Not surprisingly, in the wake of Booker, a difference of opinion has arisen over the precise weight to be afforded the Guidelines. For example, in the District of Utah, Judge Cassell held that the Guidelines should be given "heavy weight" or "considerable weight" and should be followed in all but "the most unusual cases." United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005). Similarly, Judge Richard Kopf in the District of Nebraska, held that the Guidelines must be given "substantial weight." United States v. Wanning, 2005 WL 1273158, (D. Neb. Feb. 3, 2005). In contrast, Judge Adelman in the Eastern District of Wisconsin held that the Guidelines are "just one of a number of sentencing factors" to be considered. United States v. Ranum, 2005 WL 161223 (E.D. Wis. Jan. 19, 2005).[3]

Obviously, until the Seventh Circuit rules on the precise issue, courts in this and other districts will come to diverging views on Booker. In the meantime, this Court finds Judge Adelman's reasoning in Ranum very persuasive and thus will not give the Guidelines criteria any more weight than the section 3553(a) factors. See United States v. Myers, 2005 WL 165314, at * 1-2 (S.D. Iowa Jan. 26, 2005) (adopting Judge Adelman's procedure for applying Booker).

---

[3] The above district court opinions interpreting Booker are not meant to be exhaustive but simply a sample of the differing interpretations of the current status of the Guidelines in light of Booker.

In Ranum, 2005 WL 16223, at * 1-2, the court rejected the view that "the Guidelines should be given heavy weight or considerable weight and should be followed in all but the most unusual cases." Judge Adelman noted that if given such weight, the Guidelines would in essence overshadow the section 3553(a) factors because many of the subsection (a) factors are "either reject[ed] or ignore[d]" by the Guidelines. Id. at *1. For example, while subsection (a) permits courts to consider the defendant's "history and characteristics," the Guidelines generally prohibit courts from considering the defendant's education, mental health, employment, family ties, and socio-economic status. Id. Judge Adelman therefore held that under Booker courts may impose a sentence below the Guidelines "so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors." Id. at *2.

Applying this method to the facts of the case, Judge Adelman categorized the section 3553(a) factors into three general groupings: (1) the nature of the offense; (2) the history and character of the defendant; and (3) the needs of the public and the victims of the offense. Id. at *5. In examining the history and character of the defendant, the court found that the following supported a sentence below that set by the Guidelines: (1) defendant's age (50 years old); (2) no prior criminal record; (3) "solid employment history"; (4) "devoted family man"; (5) sick mother; and (6) letters "attesting to defendant's good character." Id. *6. Based on these and other factors, the court held that the "reasonable sentence" was one below that recommended by the Guidelines. Id.

Here, with a total offense level of 13 and a criminal history category of I, the Guidelines recommend a sentence of 12-18 months incarceration. After carefully reviewing

the facts of this case in relation to the section 3553(a) and Guideline factors, this Court finds that the under both this Court's and Probation's calculations, a reasonable sentence is eight (8) months home-confinement, five (5) years probation, a fine of $4,000, and restitution in the amount of $11,180.

For example, Pease is 40 year old woman, who up until her present conviction had no trouble with the law and was an outstanding citizen and loving mother. She pays $800 a month in child support for two teenage children. In a letter to the Court, her ex-husband states that any interruption in these payments would be very detrimental to the children. Although her children live in California with her ex-husband, Pease is very close to them and visits them every month. According to the father, any interruption in these visits would "have a devastating effect on our sons emotionally." Pease also served in the United States Marine Corps for 18 years. Her commanding officer, in a letter to the court, noted that her "performance and conduct have been exemplary."

In addition, the conduct surrounding the instant offense warrants the above sentence. Before she offered the bribes in this case, Pease rejected a request for a bribe from an undercover agent posing as a corrupt GSA supervisor. When the GSA Supervisor in this case made overtures for a bribe, Pease asked the owner of her company for advice. The owner allegedly told Pease to "take care of" the Supervisor. The bribes paid came out of Pease's own pocket. In contrast to the usual bribery defendant, she did not in anyway inflate the price of the contracts to off-set the cost of the bribes. In fact, in a letter to this Court, the GSA states that Pease provided excellent service and products to the government.

Likewise, comparing Pease to the other defendants, in related cases, who were arrested

9

and convicted for bribing GSA employee, the above sentence is just and reasonable. Of six other defendants convicted of bribery under 18 U.S.C. § 201, three received probation while the other three received three to fifteen month terms of imprisonment.

      This Court thus finds that the above sentence will sufficiently punish Pease and deter persons, who are otherwise law abiding citizens, from giving bribes to obtain government contracts. It will also sufficiently protect the public in that it is extremely unlikely that Pease will be a repeat offender, given her previous clean criminal history and the fact that she will face imprisonment if she commits another offense. Accordingly, while this Court fully recognizes the seriousness of bribing a government employee, it feels that a sentence of home-confinement, probation, and a monetary penalty is reasonable in light of the above facts and the section 3553(a) and Guideline factors.

## CONCLUSION

For the foregoing reasons, this Court sustains Defendant Pease's objections and imposes a sentence of eight (8) months home-confinement, five (5) years probation, a fine of $4,000, and restitution in the amount of $11,180.

**ENTER:**

_____
**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

**DATE: May 13, 2005**